The first case this afternoon is 411-1075, Secretary of State v. ILRB. For the appellant is Lawrence A. Iwana. Are you ready, sir? For the appellee is Tyson Rowan and Christopher Turner. Will you both be arguing? Have you spoken to the clerk about dividing up your time? Okay. Mr. Iwana, you may proceed. May it please the court. First, again, let me express my sympathies on the passing of Judge Justice Powell. Thank you. In this appeal, or in this case, the ILRB and the union seek to include 116 or 119 executive ones and twos in approximately 130 facilities statewide. And the ILRB's and union's arguments regarding these executives, I'll refer to them as executives, supervisory status can be summarized by the following syllogism, in my opinion. First, part of the syllogism is that the executive's assignments in monitoring the work and evaluating and disciplining their subordinates do not satisfy the requirement under the act that a supervisor quote, direct, close quote, his or her subordinates with independent judgment. Second part of the syllogism is 75% of the executive's time is spent in assigning and monitoring their subordinates' work. Ergo, number three, by deduction, the executives can only perform supervisory functions, simple remedial math, 25% of their time, which is not a preponderance of their time, and therefore they are to be included in the bargaining agreement. The syllogism, like most syllogisms, fails due to an erroneous premise, i.e. that the executive's assignment and monitoring of subordinates' work is not quote, direction, close quote, under the act. That premise is clearly erroneous and it gets the manifest weight of the evidence both factually and legally. Let me take the legal aspects first for you and go through a few, just briefly go through a few of the leading cases on this. Of course, the primary case in this is the Freeport case by our Supreme Court. And our Supreme Court, in addressing the issue of whether police sergeants who were left to man and be in charge of the police facilities in the city of Freeport were supervisors or not under the act. And that court said, briefly, supervisors are excluded from bargaining units under the act to avoid the conflict of interest which arises when supervisors who must apply the employer's policies to subordinates are subject to control by the same union representing those subordinates. And in this case, it's not only the same union, it's the same bargaining unit that they're putting these people in. And along the lines of monitoring and assigning work, the Supreme Court held, in addition to their authority to discipline, by the way, which was found to be an authority that's exercised by them, as well as reward and evaluation and discharge actually, in addition to their authority to discipline, the ranking officers are also solely responsible for managing and directing the operation of the Freeport Police Department during their shifts. Exactly what we're talking about here as an analogy. The chief and assistant chiefs are not involved in the daily supervision of patrol officers. Same thing here. These 119 people basically are either the head of the facility and or they're the assistant head of the facility, the managers of the facility. They make these facilities work. They run the show without, on a daily basis, clearly without any undisputed evidence. And I want to just stop here to say that the union did not present any witnesses. It had three documents, one of which was a collective bargaining agreement and one was a list, two or lists of employees. The testimony here was undisputed, uncontroverted. Going on, rather the chief has delegated to the ranking officers the only supervisory authority which exists over the patrol officers. The chief relies upon the ranking officers to observe, direct, evaluate, and discipline their subordinates. That's exactly what we're talking about here and to ensure that the patrol officers are properly performing their jobs. Exactly what we have here. In this capacity, the ranking officers represent the interest of the chief vis-a-vis the patrol officers and are not simply the members of the team who give routine instructions. Their responsibility for directing, again, directing the officers and for managing the operation of the department clearly aligns the ranking officers more closely with the chief than with the patrol officers. The authority to direct subordinate officers and to adversely impact those officers through discipline and other measures falling within the scope of union representations makes the nature and essence of the ranking officers' principal work substantially different from that of the patrol officers. The issue is substantially different was conceded in this case as well. In fact, the first three criteria were found to be in favor of the secretary of state in this case. It is this authority which creates the possibility of conflicting loyalties which requires the exclusion of ranking officers from the bargaining unit. Lastly here, when the ranking officers exercise their authority to issue written reprimands or to recommend disciplinary suspensions, you ordinarily must choose between two or more significant courses of action. Accordingly, the ranking officers consistently use independent judgment. These are pages 519 through 521 of 135 Illinois Second. Accordingly, the ranking officers consistently use independent judgment when exercising their authority to discipline the officers. Lastly, most significantly, in the late evening and early morning hours, there are no personnel with authority higher than the ranking officer on duty. If the ranking officers are not supervised, then the Freeport Police Department operates entirely without supervision a large part of the time. This court also in the PSA Option 2 case repeatedly advised in reversing the board and remanding portion of those employees for hearing. This court in paragraph 201 and again in 213 and elsewhere stated, Here CMS presented evidence that Emmett had authority to independently assign and monitor work, evaluate employees, and approve time off for his subordinates. The job description clearly satisfies the requirement under the Act that a supervisor quote, direct, close quote, his subordinates with independent judgment. And then there are the two cases, the City of Sandwich and the Village of Maryville, which are cited in my brief. But there again, in the City of Sandwich case, 406 Illinois Act III, the court held at page 1012, when the chief was not at the department approximately 67 to 73 percent of the time, the sergeant was the highest ranking officer and the only officer with rank above patrol officer. It is unrealistic to conclude that patrol officers are unsupervised two-thirds to almost three-quarters of the time. The chief relies upon the sergeants to ensure the patrol officers are properly performing their job. They represent the interests of the chief vis-a-vis the patrol officers. Lastly, as to the... Counsel. Yes, sir. You've been before us before. Yes, sir. It isn't helpful to read to us decisions that you know that we're familiar with. I was just trying to point out the exact issues of monitoring, of assigning, of directing, and the use of independent judgment within these decisions. Well, then, analogize what a facilities manager does in comparison, because that would be one issue. If I was looking at this case and I was thinking about somebody that is an executive, would it be executive two or facilities manager two, whatever it is, somebody that directs a facility, what is it that they do that shows independent judgment? And how do they consistently show independent judgment? When I am assuming the secretary says, these are the employees you have, this is when you open, this is when you close, this is how you give a driver's license exam, this is what a driver's license looks like, this is the work you do, this is how many people you needed to counter, what is it that they do that's independent, that shows they're either managerial or supervising? Well, may I just preface that with, there was stipulations entered into this case, which to me are very significant. I think they should be significant to the court. There were four stipulations, because I'm about to go into the facts, as your Honor requested. The first stipulation is, with respect to, this is on page five of our brief, but I want to, it's very important, with respect to the surveys and supporting exhibits, we stipulate those as joint exhibits. So the 4,000, I mean 3,594 pages of exhibits were joint exhibits in this case. Even more importantly, and agreed that if the supervisors petitioned for employees were called to testify, they would testify as indicated in those surveys and to the exhibits set forth. So they would be testifying, and that was stipulated. The next stipulation was that I proposed a stipulation that all of the other supervisors of these employees would testify as Mr. Lazzarini testified, and that's the same question. And then we stipulated that we would file a summary of the information regarding the Executive 1s and 2s, which is in the record at C1040 to C1045. So everything that's in that record is, as if it were testimony, was stipulated as if it was testimony. As to the information regarding Executive 1s and 2s generally, you have that in the common law record, and it says whether an Executive 1 or 2, whether a manager or assistant manager, where they work, whether it's an independent work location, and the number of subordinates supervised. And I'll depart from this in a moment just saying that these people, there's a rule of thumb before the board, basically, that's never expressed in that sense, that if you supervise five or more people, you can be a supervisor. Or conversely, if you don't supervise, you shouldn't be a supervisor. Here, there are people that supervise 50 or more people, 40. And these are... Isn't that what we're trying to decide, whether they actually supervise them, or whether they're lead workers, or whether they're... I mean, one of the things that we're trying to do is, we routinely use the word supervisor as a colloquial term. That isn't what it means in the law. The law that we have to apply, you're talking about independent judgment, and consistent exercise of independent judgment, and actually choosing between two courses of action, two or more courses. So give me an example of what one of these bigger categories does. And I'm the one that picked the example of the driver's license examining station. Right. And it was found that they discipline people and discharge people. Agreed. Agreed. So that's involving... Well, I mean... Necessarily, there are cases holding that that involves the use of independent judgment. Also, the approval or not approval of overtime, a lesser kind of... Do they actually impose that discipline, or do they recommend it to a higher-up? Well, they can issue oral and written reprimands, but if it goes to a suspension, it goes higher up. So, I mean, but the courts have held that issuing oral and written reprimands is discipline and involves the exercise of independent judgment. What did the board say with regard to that point? Well, the board said that... Well, the board admitted that there was a... that these people could reward, discharge, and discipline, as the ALJ found. They went on, they said, they just came out and said, well, we don't believe it was with independent judgment, but by its nature, when you reward somebody or not reward somebody, and as I say, there are cases supporting it, whether you discharge or not, whether you discipline or not, and those are independent. All we needed is one indicia, but those are three indicia that were found by both the ALJ and board to be satisfied. The first three prongs of the test were satisfied. It was the preponderance that wasn't. So what did the board say caused them to rule otherwise? Well, the ALJ determined that it was not... just following policies. What was routine? Their supervision, monitoring, assignment, all of those things were just routine in nature, and there is that condition in the act itself that requires that it not be routine in nature, but as you heard from the Supreme Court in Freeport, the assignment, monitoring, the things that they were doing here. I mean, we all know what a driver's license bureau is, and we've been there, and I think that the reality of this situation is, well, it's somewhat different there in terms of art, as you expressed. When they enforce the policies that they have, they're in effect implementing those policies, effectuating those policies. This court has held that you don't have to formulate policy, but you have to implement it, recommend it, effectively recommend it. That's what they do. They don't even effectively recommend it. They run the show on everything that happens in a driver's license. Are you effectuating policy when you open on time? Why? Yes, you're effectuating policy when you open on time. That seems pretty routine. Well, maybe not in this world. Nothing. No, no. It should be routine. It should be routine. You know, the union pointed out to like four, you know, there's 4,000, 3,500 pages of exhibits, and they pointed out the four minuscule incidental, you know, matters involving just four people and four incidents of not consequence. The entire 3,500 pages deal with the surveys, which are testimony now, surveys which are testimony, go through each of the potential indicia of supervisory authority. And they go through them, and they put in what the – first of all, they have a general description of the duties and functions as does the position statements. The position statements are after each of the names. The position statements themselves, you know, which I think should govern in terms of the authority that people have, rather than individual – we've gone into this argument before, but rather than individual actions or not actions. I think that if someone just is a new supervisor would not have that experience. But my time is running short, and I just wanted to address one other issue on that. But all of the evidence is set forth in the job description, what I think should determine it, as well as the surveys, which are now competent evidence. What I wanted to point out is on the jurisdictional aspect. The Attorney General set forth the full provision of Section 9A5 of the Act, at S.A. 4 and S.A. 5. What is significant here is that there were two amendments, a couple of amendments, but two that are directly involved. One is the board shall ascertain the employee's choice of employee organization within 120 days after the filing of a majority interest position. However, the board may extend the time by an additional 60 days upon its own motion or upon the motion of a party to the proceeding. So that's where there's no hearing. The provision we're dealing with, in conjunction with that provision, is if a hearing is necessary to resolve any issues of representation under this section, the board shall conclude its hearing process and issue a certification of the entire appropriate unit not later than 120 days after the date of the petition was filed. The 120-day period may be extended one or more times by the agreement of all the parties to a hearing to a date certain. So there's two different, if you look at it, just statutorily construction. Here, when there's no hearing, everybody has a chance, any party or the board itself, has a chance to move that 120-day deadline. But if there's a hearing, that hearing and any continuances have to be agreed to by all parties to a date certain. Thank you. Thank you, Mr. Weiner. You have an opportunity to address us again in the public. Thank you. Who will be speaking first?  No. No. Okay. May it please the Court. Counsel. Tyson Marone, Counsel for SEIU Local 73. The first issue that I think is important here is, and I don't need to tell you all what the clearly erroneous standard here is, but that's the standard that we're working on. So we shouldn't be looking for reasons to overturn the Labor Board decision. Where we should really be looking is reasons to uphold that decision. I think I'll retire tomorrow and write an opinion piece for the State Journal Register, and the headline will be, At driver's license examining stations around the state of Illinois, no one is in charge. There are no managers and no supervisors at any of those facilities. Now, would that be factually accurate? I don't believe it's true that no one's in charge. Would it be factually accurate that there are no managers or supervisors at those entities? Well, as a matter of fact, there are these facility managers and assistant managers at these facilities. But they're not managers. Well, they're not supervisors under that definition. Oh, they're not supervisors. They're managers, but they're not supervisors. Right. So they are in charge. Well, I think where we're at here is we're looking at what the General Assembly calls a supervisor. We're looking at the statutory definition of supervisor. Which bears no relationship to the rest of the world. No, I believe it's a statutorily created term of art. For state employees. Correct. Robert, if you go to the Secretary of State's office, for instance, who wouldn't be capable of being subject to union representation? Well, I can tell you, above these exact ones and twos, there are exact threes and fours who actually are already represented by another union. Above them, there's an administrator, a deputy director, and a director of driver services. Now, I haven't actually reviewed those three classifications of employees above the exact threes and fours, but it may be that those are the supervisors, managers, or confidential employees that would not be appropriate for union representation. So with regard to the driver's license stations throughout the state, it's a term of art. And in our mother's tongue as to who's the supervisor or manager, there's no one in charge. There is no one who is a supervisor as that term is defined by the General Assembly. The General Assembly intended to create a new term of art unrelated to what anyone, not a law school graduate, would understand as any meaning. Well, they created a term of art that was different than any other term of art that was known. It was different than the NLRA standard. What was their motivation to do that? The motivation was that the General Assembly explicitly sought to extend bargaining rights broadly. And the primary basis that they did that, and the primary distinction between the NLRA definition of a supervisor and the IPLRA, the Illinois definition of a supervisor, is this preponderance requirement. So not only do they have to perform one or more of those 11 enumerated functions, but in addition to that, they have to spend a preponderance of their time devoted to those functions. So Mr. Weiner pointed out they can issue oral and written reprimands. But then the General Assembly goes one step further. And for non-police employees, they have to spend a majority of their time both disciplining and performing any of those other enumerated functions for a preponderance of their work time. And that's the language of the statute, and that's that term of art. Would it be fair to say that your position would be, and I understand the burden that's over here, but that the majority of what these individuals do is so routine and so expected that it cannot rise to the level of supervisory or managerial, and it cannot rise to the level of a consistent use of independent judgment or a preponderance of your time doing the kinds of things that might give an indicia of manager or supervisor? That's correct. That's correct. Based on what's on the record, this is really about direction at this point. Because direction is the only point that the employer claims constitutes a preponderance of these folks' work time. The testimony was that these exact ones and twos spend 75% of their time directing their subordinates. So the real question for us is whether that direction is done with the requisite amount of independent judgment. Give me a real world example of that. Of direction being done with independent judgment? Or without independent judgment. Without independent judgment. The direction that you say routinely goes over. Sure, sure. The Supreme Court's given us a couple of examples. No, no, no. Real world. A real world example of supervisors performing duties that doesn't constitute a preponderance. Non-supervisors performing directions. Very good. Outsiders might think, well that probably makes them a supervisor, but they're not because of this term of art. So the specific examples, and there were a few of them that were actually given from the employer's case, but the few examples, they said that these exact ones and twos schedule employees for time off. And they claim that that constitutes the supervisory direction. But then if you dig into the facts, if you look into the collective bargaining agreement that governs these subordinates, if you look into the employer's policy, what's clear is that there's an annual vacation selection. And that annual vacation selection is done by seniority order. So there's really no discretion there. It's going through the seniority list and scheduling people for time off. If you ask for it, you get it. If you're high enough, up the totem pole. Exactly. The other examples they gave, they gave overtime. They said that an exec one or two can determine whether overtime is necessary based on operational needs or based upon customer service. But there again, the collective bargaining agreement ties these exec ones and twos hands and says that overtime must be proportioned out on a rotating seniority basis. So there again, there's this, what a layperson may call supervisory authority, but that supervisory authority requires very little to no independent judgment. It's reading the contract and looking at the seniority list. Is there any dispute here about the evidence presented at the hearing? That is, Mr. Weiner spoke of a large volume of stuff that was presented by stipulation. So the stipulation is all these people called to testify would have testified as indicated in all that material? I believe what the stipulation was was that we agreed that those documents could be entered into evidence. But what both the administrative law judge and the labor board found was that most of that 3,000-plus pages of documents, they called it singularly unhelpful. They cited the cases saying that this going through and saying they direct, that's the least helpful type of evidence. Going through and saying that they evaluate, that's the least helpful type of evidence. We need specific examples. We need to know exactly what they do that constitutes direct. Because the documents don't include that information? They do not, no. And both the ALJ and the labor board so found. Going through these other duties that they claim constitutes direction, here are some examples from that 3,000-page document. There's an e-mail from one of these exec 1s and 2s saying, nobody touch the thermostat because I guess the employees were turning it up, turning it down, turning it up. That's not independent judgment. That's routine. That's clerical. There is an e-mail from an exec 1 or 2 saying don't polish your nails at your workstation. Hardly the exercise of independent judgment. And that is not one that we pulled. Why is that? Why is what? Why is that not the exercise of independent judgment? Could a different supervisor say if no one's coming to your workstation and you don't have anyone there, go ahead and polish your nails? I believe the standard is it has to be significant matters. It can't be routine or clerical matters. Well, I mean, we're talking about people with a driver's license station. This isn't questions about arming NATO. What do you mean it has to be significant matters? What's a significant matter? So, again, they have the authority to schedule vacations, but they do it on this rotating basis. They have the authority to do other things. You said the polishing nails wasn't a significant matter. Give me an example of something that would meet your definition of a significant matter with regard to a clerk at the driver's license station. Disciplining or discharging with independent authority. Can they do that? They cannot. So that's a power, but it doesn't concern the subject. The subject is what's a significant matter? We only have the examples that they gave, and it's the union's position that these examples are not significant matters. As far as to theorize about what would be a significant matter, frankly, no great examples come to mind, but what they have are not significant matters, and they certainly don't show that these folks spent a preponderance of their employment time engaged in these supervisory functions or purported supervisory functions. What about the fundamental problem that they are telling other people what to do and what not to do, and this looks like someone who's in charge of managing or supervising to a layperson, yet perhaps because of internal union politics, they can't or shouldn't be doing that. Maybe the guy they're telling that to is the shop steward, for lack of a better way to put it. Is that going to create problems for the supervision and proper functioning of the office? What I can tell you is that our union represents 28,000 public and publicly funded employees, and a number of those individuals have these supervisory titles, and they have some of these duties. It's my position that being a good employee and being a good union member are not mutually exclusive. And never have been and no problem could ever arise, and why would anyone ever think that? I'm not saying that no problems could ever arise. What I'm saying is that... So when problems arise, is it going to be a problem with regard to management or supervision because of the rank within the union of the problematic employee? What we always counsel our employees to do is do their jobs and follow their job descriptions. Is that an answer to my question? Yes. Because in other words, the answer to my question is no concerns, Judge, because no one is ever going to do anything wrong. Is that your response to... Humiliate for the moment. Let's assume someone, however odd it might be, every 28,000 employees, did something wrong. Okay? He was a bad employee. Yet, he's a lesser rank than a manager of the driver's license station, but he's a higher position within the union. Would that create problems for the supposed supervisor to deal with this fellow and his miscreant behavior? Again, all we can do is counsel our employees to do their jobs. To the extent that there are those tensions, I would suggest to you that those tensions exist because of the statutory framework created where in the General Assembly, in the State of Illinois, individuals can exercise certain supervisory functions and still be in a unit with their subordinates. Okay. Thank you all. Thank you, Counsel. Mr. Turner? Your Honor, Counsel, may it please the Court. Counsel. I'm Christopher Turner, the Assistant Attorney General, here on behalf of the State Panel of the Illinois Labor Relations Board and its members. Now, this appeal is not a police case, and that's critical here. Excuse me. This appeal is not a what case? It's not a police case. It doesn't involve the certification of police officers. That's important because the Secretary relies on authority, which is in each case, whether it's Maryville, City of Sandwich, the part of the analysis in City of Freeport, each of which address the certification of police officers. And in that, under the statutory definition of a supervisor for police officers, there is no fourth element. There is no preponderance of time element. But as the Secretary has recognized, and has already argued to you, that was specifically the element that the Board found was not shown here. So your position, if I understand you correctly, then, which is the authority that Mr. Weiner was citing to us earlier, is inapplicable because they were all police cases? PSA Options 2 is not a police case. But, yes, the analysis that he looked at on City of Freeport is a police case, as well as Maryville and Sandwich, and they're inapplicable because of that. Okay. This fourth element is missing. It doesn't address it at all. Except, of course, the City of Freeport actually was a consolidated appeals, and there was a separate part of the decision about fire department lieutenants. And that case is instructive here, and that did involve an employee and the preponderance of time. And particularly, there they affirmed the certification of the fire department lieutenants because there was no preponderance of time. They agreed just as here. And also just as here, those fire department lieutenants, the lieutenants were in the department. They were the ranking officers. They were the ones who, in layman's terms, were running the show at the fire stations, at the substations. They were the ones who were on duty with the firefighters underneath them. They were assigning work and duties, assigning tasks. They were transferring them when they thought there were staffing needs changed. However, the court agreed with the board that it was merely routine and clerical in nature. Because of the nature of the tasks that they were providing, when they assigned tasks, they were just doing it consistent with the manual, consistent with the staffing needs and the staffing levels, that it was just routine and clerical in nature. And there was no evidence showing that that kind of assignment or oversight was being done with the type of consistent use of independent judgment necessary to render it supervisory activity within the meaning of the act. And that is the same case that we have here. The board, if there is any critical distinction between this case and the city of Freeport, is that we really had no evidence at all provided by the secretary. And that was sort of a failure of putting on, of meeting its burden the slightest. They had a single witness who testified basically just with a series of conclusory comments which just parroted the statute, saying that these managers, they supervise, they direct. Yes, they overall enforce the, excuse me, they give overall direction and enforce the facility in general. But the testimony didn't provide any examples or any sort of concrete explanation of what the witness meant, what kind of direction it was going. It didn't even actually parrot the statute to explain that they were directing with it the consistent use of independent judgment. Because there was no evidence provided, there was no evidence pointed out by the secretary in support of that argument, he failed to sustain his burden. So the board simply couldn't find that there was any sort of exercise of direction here, any sort of oversight or assignment going on. Now to the extent that the board did look at the case, at the documents that were cited by the secretary, they also didn't show independent judgment. We looked at some of those. There was those ones about changing the temperature. There were also, there were jobs, there were people who would say, well, this person is doing this flows right now, but you know, somebody else is not going to be out next week, so you move over to their desk next time. That's the kind of, that was the kind of assignment that was going on. It was a kind of routine administrative actions, which didn't reflect any sort of use of independent judgment, as the board understands it from the meaning of the act. To the extent that there was any more concrete testimony actually elicited in the case, and was done by the union, they asked, well, when they assign work, what is it, can they do it outside of the job description, how do they do it, actually, is the question. And they did it through the job descriptions. And the witness admitted that they couldn't go outside the job descriptions, and other than the job descriptions, they just assigned work based on the staffing levels and the workflow, whether or not there was a longer line at one desk versus another desk. So what the board faced here was just a complete lack of evidence of any sort of exercise of the use of independent, sorry, of supervisory activity of the direction with the use of independent judgment. And based on that, it made the reasonable inference that there was none, such evidence, and therefore found that the secretary failed to meet its burden in this case. Now, even if the secretary had successfully argued that they directed with independent judgment in some fashion or another, the testimony based on the preponderance of the use of time itself was conclusory and didn't meet their burden. Literally all of the, it was the director of metro division, all he testified was that they spent 75% of their time supervising their employees, basically parroting the statute. And then sort of a follow-up leading question said, oh yeah, how much time did they spend directing 75% of their time? The board requires more evidence than just that sort of conclusory statement. It needs to have some sort of understanding about how these petitioned employees are concretely spending their time to understand. The same type of questions that the court asks now. What were they doing? What were they, how were they really doing? What is an example of them spending their time? And the secretary was not providing any such examples at all. While they did, there was actually stipulated into the record 3,500 pages of documents. The secretary never tried to explain whether it was the witness never testified to those documents or explained, gave a single example of what any of those documents or any particular facility manager meant. Or even in the briefing today to the administrative law judge, explained what those documents meant. So just like a court, the board is set as a neutral fact finder. It has the duty under the statute in order to win the petition for employees and then when that is challenged based on supervisory exclusion, the board has the duty to look at the evidence that's brought to it and decide do these petition for employees meet the four criteria, the four elements to be a supervisory employee. Here, there was not enough for the fourth element and therefore the board found that they simply could not find that they were supervisors under the act. Another case in which the board went forward was, a similar case was the Chief Judge of the Circuit Court of Cook County. There also were intermediate supervisors and clerical managers. Similarly, they assigned work. They also could approve overtime and approve vacation just like the executives did here. However, the court still found that they were not supervisors within the meaning of the act because they didn't direct with the consistent use of independent judgment. Now, counsel asked before about what about the fact that these are the only, sorry, the court asked before about what the fact that these are the top-ranked employees. At least on the record, some of these executives are the top-ranked employees at the office. However, as I said before, in the city of Freeport, the fire department lieutenants also were the top-ranked employees, at least at some of the fire stations. There was no indication that there was anyone above them at the actual fire stations and certainly no one at the fire stations themselves. that was running the show or assigning work or overseeing the firefighters. And this court, earlier in the case of the city of Vermillion, also in that case addressed correctional officers, who the sheriff's department claimed were supervisors. And they were, for significant periods of time, the top-ranked officer at the jails. However, the court said that is not, you can't evade meeting each of the elements of the act. To go to your Honor's question about, well, what is it, supervisor, what is the purpose of having this exclusion here? It goes exactly to this conflict of interest you're concerned about. The General Assembly made a judgment. Yes, every employee is going to have some sort of conflict of interest with their employer. And so far, if they were unionized, would have some sort of conflict. Wait a minute. Every employee has some sort of conflict of interest with his employer? Sure, Your Honor. We all have our own self-interests and our employers have their interests. And to some degree, you're going to theoretically be able to deconstruct it if you find some sort of conflict between those interests, whether they're going to act within their own interests versus their employer's interests. However, the General Assembly has made a judgment. They've created this exclusion with its four elements in order to determine how to win that conflict of interest raised to such a level that those employees, those public employees will be excluded from collective bargaining. Here, some critical ones are it can't just be the fact that they're directing employees because it has a second element which says, yes, that's required. They need to have the authority to direct. Then there's a third element that says, to the extent they're directing, that authority has to require the consistent use of independent judgment, and it cannot be routine or clerical. And in addition, there's also the fourth element that whenever they're exercising this authority, which requires the use of independent judgment, that it must be done for preponderance of the time. Okay, your time is up. Thank you, Counsel. Thank you, Your Honor. Mr. Weiner, any rebuttal, sir? I'll raise my hand.  You know, this last argument sort of repudiated his own client's findings, both the board and the ALJ found that there was authority to perform and use independent judgment at the performance of three of the 11 functions under the Act, Appendix 15, reward, discharge, and discipline. All we needed was one, and so the other question is, well, how do you? You asked me a question, what specific examples there are? And I might tell you that these questionnaires, which are testimony, according to the stipulation, ask to, for example, describe a specific example where the employee at issue gave, distributed, or assigned work to one or more of his associates. And then there's responses. And there are also exhibits to, I don't know, specific examples, although as the Supreme Court said in Freeport, it's the authority to use independent judgment in opposing discipline rather than how often discipline is opposed. The reason we have 3,500 pages of testimony of exhibits and testimony by stip is because they demand specific examples rather than there's just the authority per se as in the job description or otherwise. Also, the record is really replete with a number of specific examples, which convince the ALJ and the Board. Now, the testimony, page 14 of the transcript, well, is there any oversight with respect to the E-1s and E-2s that are in their separate facility in terms of running facility? On a day-to-day basis, no, undisputed, unrebutted, unrefuted testimony. What about the argument that the cases or many of the cases you cited to us deal with police forces and those are statutorily different? Well, I don't see any. I don't see any. I mean, he's correct that the only difference was that there's a preponderance standard, although I argue maybe it shouldn't be applied, but that's another issue for another day. That's why I don't understand your answer. You better start again. My question was he argued that they were police cases that apply and this is not a police case, so your authority was an opposite. Your response is what? They're employees. They're employees that have supervisory. What about his argument about police cases? Is he right? He's wrong because the thing about the police case was that they were, like the sergeant's case in Freeport, they were there running the show. They were there fully responsible for what happened, just like I read. So there's no statutory difference in these cases and the Freeport case and others are fully applicable? Yes, sir. Other than the preponderance of the evidence standard. The courts repeatedly say there is that one difference and that's what happened here. There's also was a question asked in testimony with regard to the direction of work. You testified generally that they direct their work. What are they directing them to do? This is at page 45 and 46. To do when they're directing their work. Answer, well, they're directing. They're directing them to do their job as that's in the job description. They're directing them as far as different shifts, the different breaks, job assignments, job duties. It's an overall direction of the employee. And that's what's a quandary here in the sense of, Your Honor, Justice Knecht asked me, well, give me specifics. What they're doing is they're walking around the facility and they're making it work. They're supervising. They're directing. In your words in PSA Option 2, they're monitoring. They're assigning work. They are awarding overtime because they can deny overtime. They can deny it. They can deny vacation time. Decisions that have to be made. They discipline people. Whether someone's going to be an oral or written reprimand that's in their sole jurisdiction, they have a right that they're making a choice between two options. Discipline or not. And also to what extent they're being disciplined. So, I think that there was an adequate record which was actually completely ignored, completely ignored by the ALJ and by the Board as to each of the elements, including the element of direction. If that is of counsel, we'll conclude this matter. Thank you for your advisement. See you in recess.